UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:15CR199CEJ (SPM) |
| KHELBY L. CALMESE, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements (Docs. 78 & 90) be **DENIED.**

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of October, 2016.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CR 199 CEJ (SPM) |
| | ) | |
| KHELBY L. CALMESE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b) for pretrial matters. Currently pending before the Court is Defendant's motion to suppress evidence and statements (Docs. 78 & 90). [1]

### BACKGROUND AND PROCEDURAL HISTORY

On January 20, 2015, St. Louis City Police officers arrested Defendant Khelby Calmese, searched his residence, and seized drugs, firearms, currency and other items without a warrant. Calmese was subsequently charged in an indictment with being a felon in possession of one or more firearms, in violation of 18 U.S.C. § 924(g) (Count One); possession with intent to distribute heroin; and possession with intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841 (Counts Two and Three, respectively). Calmese has moved to suppress the physical evidence seized and statements he made at the time of his arrest on grounds that they were obtained in violation of his rights under the Fourth and Fifth Amendments. The United States has resisted the motion on grounds that the arrest was lawful; Calmese voluntarily made statements after being advised of his *Miranda* rights; and Calmese consented

---

[1] For reasons that are not entirely clear, Defendant's post-hearing brief is filed as a Motion to Suppress Supplemental Evidence and Statements. (Doc. 90). The Court construes the post-hearing brief as a supplement to Defendant's initial motion to suppress and intends for this report and recommendation to resolve all issues raised in Defendant's initial and supplemental "motions".

to a search of the apartment and his car which yielded the physical evidence Calmese is seeking to suppress.

On July 22, 2016, I held an evidentiary hearing on Calmese's motion. St. Louis City Police Detectives James Wilcox and Justin Robben testified on behalf of the United States. The United States also submitted a consent-to-search form. (Govt. Exh. 1). Calmese did not present any witnesses or exhibits at the evidentiary hearing. At the conclusion of the hearing, defense counsel made an oral motion for time to file a post hearing brief. The undersigned granted that motion and, at counsel's request, ordered a written transcript of the evidentiary hearing to assist in preparing the report and recommendation (Doc. 83). A transcript of the evidentiary hearing was filed on August 18, 2016, (Doc. 84). Defendant and the United States filed post-hearing briefs on September 9, 2016. (Docs. 90 & 91). Thus, Defendant's motion to suppress is fully briefed and ready for a ruling.

Based upon the evidence adduced at the hearing on the motion to suppress, as well as a review of the transcript of the hearing in this matter, and the briefs of the parties, the undersigned makes the following findings of fact and conclusions of law:

I. **FINDINGS OF FACT**

Unless otherwise noted, the following factual findings are based on the testimony of St. Louis City Police detectives James Wilcox and Justin Robben. At the time of the hearing, Wilcox and Robben were both veteran St. Louis City Police detectives with experience investigating violent crimes as part of a task force and/or special operations within the City of St. Louis. I found the testimony of both detectives to be credible.

On the evening of January 20, 2015, Detective Wilcox and another detective, Joe Hill, were patrolling a South City neighborhood ("Dutchtown") in an unmarked police car when they observed Calmese's car, a 2000 Buick Regal, run a stop sign and make a left turn without signaling. Calmese then began driving his car at a relatively high rate of speed and in what appeared to be an erratic manner by making abrupt turns. As a result, the officers called for assistance in conducting a vehicle stop.

St. Louis City Police officers Robben and Slama answered the call for assistance and were provided a description of the vehicle. When they first spotted Calmese's car, they observed it turn onto Gasconade, quickly turn onto Michigan, and then abruptly pull over to the curb. Before the officers could activate their lights and conduct a traffic stop, Calmese got out of the car and began walking toward a nearby apartment building. Calmese got out of the car in such a hurry that he failed to close the driver's side door or manually turn off his headlights.

At that point, Detective Robben got out of his car, shined his flashlight on Calmese, and began speaking to him. He advised Calmese that he was a police officer, and that he wanted to talk to him about how he was driving. However, Calmese continued walking away. Detective Robben told Calmese to "stop walking" but he kept walking away. Detective Robben noticed that Calmese was dragging his right foot and holding his waistband as he walked toward the apartment building. Believing that Calmese might be armed, Detecive Robben drew his weapon and began to order Calmese to show his hands. When Calmese was about half way to the apartment building, Calmese removed a firearm from his waistband and started running toward the apartment building. Detective Robben yelled "Gun!" to warn the other officers that Calmese was armed. He pursued Calmese across the street but, as a precaution, kept a distance of 10-15 yards between himself and Calmese. As he pursued Calmese, Detective Robben continued to shine his flashlight on Calmese and continued to shout orders to Calmese to drop the gun and stop running. Calmese did not comply with those orders.

Once Calmese reached the apartment building, he used a set of keys to open the door to a lower level apartment. He was still grasping the gun he pulled out of his waistband when he entered the apartment, leaving the apartment door open and the keys dangling from the lock. From his vantage point on an adjacent lot, Detective Robben could see that Calmese entered a kitchen area inside the apartment. He saw Calmese place the gun on a table and pull a dishrag over the gun. Meanwhile, Detective Robben, who still had his own gun drawn, was shouting orders for Calmese to come out of the apartment.

Calmese eventually complied by putting his hands up and walking out of the front door and onto the front porch of the apartment.

Shortly after Calmese exited the apartment, Detective Robben was joined by Detective Hill and Sergeant Slama. Detective Robben observed Detective Hill handcuff Calmese and read him his *Miranda* rights from a card. Calmese did not appear to be under the influence of any drugs or alcohol and acknowledged in Detective Robben's presence that he understood his rights. Thereafter, while Detective Robben was obtaining pedigree information from Calmese, Calmese advised that he was on probation for robbery. In response to a question by Detective Robben, Calmese stated he didn't know if there was anyone else inside the apartment.

After Calmese had been handcuffed and advised of his *Miranda* rights, Detective Wilcox joined Calmese and the other officers near the front porch of the apartment. At Detective Hill's request, Detective Wilcox retrieved a consent-to-search form from his vehicle. Detective Hill then presented the consent-to-search form to Calmese, and Calmese, Detective Hill, and Detective Wilcox signed the consent-to-search form. *See* Govt. Exh. 1. Calmese did not appear to be under the influence of any drugs at the time he signed the consent-to-search form. Nor is there any evidence that Calmese was physically or emotionally harmed or threatened when he consented to the search.

Once Calmese executed the consent-to-search form, detectives performed a protective sweep of the apartment, which confirmed that no one else was in the apartment. During the sweep, the officers found a firearm on the counter. Detective Robben advised Detective Hill that the gun on the kitchen counter was the firearm he saw Calmese place on the countertop. Detectives subsequently searched the apartment and Calmese's car pursuant to the consent to search and seized, among other things, narcotics, cash, and a firearm.

II. CONCLUSIONS OF LAW

### A. CALMESE'S ARREST DID NOT RUN AFOUL OF THE FOURTH AMENDMENT

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. It is well established that "[t]emporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of the Fourth Amendment." *United States v. Gunnell,* 775 F.3d 1079, 1083 (8th Cir. 2015) (internal quotation marks omitted) (quoting *Whren v. United States,* 517 U.S. 806, 809-10 (1996)). The decision to stop an automobile is generally reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id.* Indeed, the Eighth Circuit has repeatedly held that "if a defendant is detained incident to a traffic stop, the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed." *Id.* at 1083-84 (quoting *United States v. Ovando–Garzo,* 752 F.3d 1161, 1163 (8th Cir. 2014)).

The evidence presented at the hearing clearly demonstrates that Detectives Wilcox and Hill had probable cause to execute a traffic stop based on their personal observations. Detectives Wilcox and Hill observed Calmese run a stop sign, fail to use a turn signal, and then speed through a residential neighborhood in what appeared, to the detectives, to be an attempt to evade a traffic stop. They relayed their observations to Detectives Robben and Slama who responded to the call for assistance. These facts alone were sufficient to provide probable cause to justify a stop and detention of Calmese.

Calmese's subsequent flight from police provided further justification for his detention. "Various behaviors and circumstances can contribute to, or be sufficient to provide, reasonable, articulable suspicion. For example, unprovoked flight at the sight of an officer can contribute to reasonable, articulable suspicion." *United States v. Benson*, 686 F.3d 498, 502 (8th Cir. 2012) (quoting *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010)). *See also Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)

(unprovoked flight is simply not a mere refusal to cooperate); *United States v. Sawyer*, 588 F.3d 548, 554 (8th Cir. 2009) (finding police had reasonable suspicion where defendant was driving at a high rate of speed and fled on foot as law enforcement converged), *overruled on other grounds in, United States v. Eason,* 829 F.3d 633, 641-42 (8th Cir. 2016). Indeed, the Eighth Circuit has held that a defendant who, in violation of state law, runs away from police attempting to conduct an otherwise lawful stop "forfeit[s] any Fourth Amendment protection by resisting and running away . . . thus creating probable cause to arrest [the defendant] . . . and to search [the defendant] incident to that arrest." *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006) (applying a Nebraska law that is very similar to Mo. Rev. Stat. 575.150, which makes it a crime to resist an arrest, stop or detention by fleeing from the officer attempting to make the arrest, detention or stop). *See also Freeman v. Adams,* No. 1:12CV86 SNLJ, 2014 WL 1056760, at *10 (E.D. Mo. Mar. 19, 2014) (holding that officer had probable cause to arrest plaintiff for resisting a lawful investigatory stop by fleeing in violation of Mo. Rev. Stat. § 575.150).

Based on the foregoing factual findings, in the instant case, there was probable cause for the police to believe that Calmese had violated Missouri state law which makes it a crime to flee from police when they are attempting to make a lawful stop or arrest. *See* Mo. Rev. Stat. 575.150. Here, the evidence shows that when Calmese exited his car, Detective Robben advised that he was a police officer and that he wanted to talk to Calmese about the way he was driving. Calmese kept walking away, and eventually started to run, even after Detective Robben ordered him to stop. This conduct supplied further reasonable suspicion, if not probable cause, for Calmese's subsequent arrest.

Finally, based on the totality of the circumstances, the detectives' detention of Calmese was supported by a reasonable, articulable, suspicion that Calmese was engaged in criminal activity. "An investigative stop can grow out of a traffic stop so long as the officer has reasonable suspicion of criminal activity to expand his investigation, even if his suspicions were unrelated to the traffic offense that served as the basis of the stop." *United States v. Gomez Serena*, 368 F.3d 1037, 1041 (8th Cir. 2004) (citing *United States v. Long*, 320 F.3d 795, 799-800 (8th Cir. 2003)). *See also United States v. Gregory*,

302 F.3d 805, 809 (8th Cir. 2002) (quoting *United States v. Foley*, 206 F.3d 802, 806 (8th Cir. 2000)) (An officer conducting a traffic stop 'may properly expand the scope of his investigation as reasonable suspicion dictates'). The officer's suspicion must be based upon "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Jones*, 269 F.3d 919, 927 (8th Cir. 2001). An "inchoate and unparticularized suspicion or hunch" is insufficient. *Terry v. Ohio,* 392 U.S. 1, 27 (1968) (internal quotation marks omitted). The court may consider any added meaning that certain conduct might suggest to experienced officers in the field, but the officer's reasonable suspicion cannot be "just a mere hunch" that criminal activity is afoot. *Jones*, 269 F.3d at 927. In determining whether the requisite degree of suspicion exists, the court must determine whether the facts collectively establish reasonable suspicion and not whether each particular fact establishes reasonable suspicion—the whole picture, i.e., the "totality of the circumstances" must be taken into account. *See United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002).

As defense counsel correctly noted at the suppression hearing, in the absence of any evidence that officers had prior knowledge that Calmese was ineligible to possess a firearm, the fact that Calmese may have been carrying a concealed firearm, standing alone, would not be sufficient to give rise to a reasonable suspicion that he was engaged in criminal activity beyond the traffic violation. However, the officers' reasonable suspicion of criminal activity was informed by several additional facts. Specifically, Detectives Wilcox and Hill observed Calmese driving erratically and at a high rate of speed through a residential neighborhood; as police were pulling up behind Calmese, he abruptly parked and exited his car, leaving the headlights on and the driver's side door open; Calmese ignored Detective Robben when the detective identified himself as a police officer and stated that he wanted to talk about the way Calmese had been driving; Calmese also ignored Detective Robben's orders to stop walking; officers observed Calmese dragging his leg while clutching his waistband and observed Calmese pull a gun from

his waistband and run into a nearby apartment; and Calmese emerged from the apartment only after placing the gun on a counter in the kitchen of the apartment and covering it with a dishrag.

In sum, although each of the foregoing facts may not, individually, rise to the level of reasonable suspicion of criminal activity, taken together, and seen through the eyes of an experienced police officer, the foregoing facts constitute reasonable articulable suspicion that Calmese was illegally carrying a firearm and/or otherwise engaged in criminal activity.

## B. THE POLICE DID NOT VIOLATE CALMESE'S FIFTH AMENDMENT RIGHTS

Calmese contends he was not advised of his *Miranda* rights before answering questions by police on his front porch. He further contends he was "in custody" when he made those statements and therefore was questioned in violation of his *Miranda* rights. The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court extended the Fifth Amendment privilege against compulsory self-incrimination to individuals subjected to custodial interrogation by the police. 384 U.S. 436, 460–461, 467, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). "The basic rule of *Miranda* is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). *Miranda* warnings are required prior to questioning "whenever a suspect is (1) interrogated (2) while in custody." *Griffin,* 922 F.2d at 1347. Unless a suspect is warned of his or her Fifth Amendment rights, any statements elicited from the suspect are inadmissible at trial and should be suppressed. *Id.* at 476, 492.

The United States does not dispute that Calmese's statements were the result of a custodial interrogation. Instead, it contends that Calmese's statements were voluntarily made after he was advised of his *Miranda* rights. I agree. The evidence presented at the hearing demonstrates that Calmese was advised of his *Miranda* rights before he made any custodial statements to police. Detective Robben credibly testified that he observed Detective Hill read Calmese his *Miranda* rights from a card after

Detective Hill placed Calmese in handcuffs. Detective Robben further testified that Calmese acknowledged that he understood his rights and then proceeded to answer questions about his pedigree information and probation status. Detectives Robben and Wilcox also credibly testified that Calmese did not appear to be under the influence of any substances, and there is no evidence to suggest that Calmese was threatened, or physically or psychologically abused before he answered questions or made statements to police. Based on the foregoing factual findings, Calmese has failed to demonstrate any factual support for his assertion that he was not advised of his *Miranda* rights.

The foregoing factual findings also demonstrate that Calmese's statements to police were voluntary. "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011) (quoting *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004)). This determination must be made by looking at the totality of the circumstances, including both "the conduct of the officers and the characteristics of the accused." *LeBrun*, 363 F.3d at 724. Factors include, among other things, "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Boslau*, 632 F.3d at 428 (quoting *Sheets v. Butera,* 389 F.3d 772, 779 (8th Cir. 2004)). Although "[t]he government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary," *LeBrun,* 363 F.3d at 724, "[c]ases in which a defendant can make a colorable argument that a self- incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarthy,* 468 U.S. 420, 423 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." *United States v. Mendoza,* 85 F.3d 1347, 1350 (8th Cir. 1996).

### C. THE SEARCH OF THE APARTMENT AND CALMESE'S CAR DID NOT VIOLATE THE FOURTH AMENDMENT

Physical evidence seized from the apartment and Calmese's car should not be suppressed because those items were discovered pursuant to a valid consensual search. The Fourth Amendment shields individuals from unreasonable searches and seizures by law enforcement. *United States v. Ramirez,* 676 F.3d 755, 759 (8th Cir.2012). However, the prohibition against a "warrantless entry of a person's home . . . does not apply . . . to situations in which voluntary consent has been obtained[.]" *United States v. Anderson*, 688 F.3d 339, 344 (8th Cir. 2012). When determining whether a suspect's consent to search was voluntary, the court will consider the totality of the circumstances. *United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005). The analysis requires consideration of the following factors, (1) the defendant's age, intelligence and education; (2) whether the defendant was under the influence of drugs or alcohol; (3) whether the defendant was informed of his right to withhold consent; and (4) whether the defendant was made aware of his *Miranda* rights. *United States v. Almendares*, 397 F.3d 653, 660 (8th Cir. 2005). The court also evaluates the environment in which the consent was given, particularly, (1) the length of the detention; (2) whether the defendant was threatened; or (3) was the victim of promises or misrepresentations; (4) whether the defendant was in custody or under arrest when the consent was given; (5) whether the consent was given in a public or secluded place; and (6) whether the defendant stood by silently during the search. *Esquivias*, 416 F.3d at 700.

In the present case, the uncontroverted evidence presented during the evidentiary hearing clearly establishes Calmese knowingly and voluntarily consented to the search of the premises. Detectives Wilcox and Robben both testified that, based upon their training and experience, Calmese was not intoxicated nor under the influence of drugs. Detective Robben further testified that Calmese was not only informed of, but also acknowledged his understanding of, his *Miranda* rights. With respect to the environment in which Calmese gave the officers consent to search the premises, Detectives Wilcox and Robben both testified that Calmese was not threatened or promised anything in exchange, and that

Calmese gave consent while under arrest on the porch. Indeed, Calmese signed a consent form, authorizing the officers to search the premises. Weighing the evidence in the context of each of these factors, I conclude Calmese knowingly gave the officers voluntary consent to search the premises.

Because the protective sweep provided an independent basis for a warrantless search of the apartment, items discovered by police during the protective sweep of the apartment are also not subject to suppression. A protective sweep is an exception to the general rule against warrantless searches because a "legitimate concern for the safety" of law enforcement officers or other individuals constitutes exigent circumstances that justify a warrantless entry." *United States v. Hill*, 430 F.3d 939, 941 (8th Cir. 2005) (quoting *United States v. Vance*, 53 F.3d 1144, 1147 (8th Cir. 1989). *See also United States v. Williams*, 633 F.2d 742, 744 (8th Cir. 1980) ("Where there is a reasonable fear of harm, a warrantless entry may be justified"). Officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets or other spaces immediately *adjoining* the place of arrest from which an attack could be immediately launched." *United States v. Buie*, 494 U.S. 325, 334 (1990).

Here, officers were justified in doing a protective sweep of the apartment even though Calmese was arrested on the front porch of the apartment. Detective Robben observed Calmese run into the apartment with a firearm and attempt to conceal it on the kitchen counter under a dishrag. When asked if there was anyone else in the apartment, Calmese stated he "didn't know." These facts make this case analogous to *United States v. Hill,* 430 F.3d 939 (8th Cir. 2005). As in this case, the officers in *Hill* arrested the suspect outside of his residence. The arresting officers had actual knowledge that other individuals were inside the residence, but ***assumed*** there may be weapons as well. The court reasoned that the nature of the charges against the suspect, combined with the fact that other individuals were in the residence, was enough to justify a protective sweep. Although the officers in this case did not know whether there were other individuals in the apartment, they knew for a fact that there was gun in the kitchen of the apartment, which was adjacent to the front porch. Given this combination of facts – namely, the officers' uncertainty as to whether there were other occupants of the apartment and the

certainty as to the presence of a firearm – like the officers in *Hill,* the officers in this case were justified in conducting a protective sweep of the apartment to ensure their safety.

In sum, the protective sweep was a lawful, independent basis for seizure of the items seized from the apartment.

## **CONCLUSION**

For all of the foregoing reasons, Calmese's motion to suppress evidence and statements (Doc. 78 & 90) should be denied.

*[signature]*
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of October, 2016.